```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| ESTARLIN HIDALGO-PEREZ | : | NO. 12-671-1 |

## MEMORANDUM

Bartle, J.                                            January 17, 2013

Before the court is the motion of the United States for revocation of an order of a magistrate judge granting pretrial release to defendant Estarlin Hidalgo-Perez ("Hidalgo-Perez" or "defendant"). We review de novo an order from a magistrate judge granting a criminal defendant pretrial release. See 18 U.S.C. § 3145(a); United States v. Delker, 757 F.2d 1390, 1395 (3d Cir. 1985).

Hidalgo-Perez is one of four defendants charged in a two-count indictment with conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1).

Hidalgo-Perez appeared before a magistrate judge on January 11, 2013 for an arraignment and a hearing on the motion of the government for pretrial detention (Doc. #33). At the conclusion of the hearing, the magistrate judge denied the

government's motion and granted pretrial release on stated conditions.  The magistrate judge's order requires him to post $100,000 bail, report to pretrial services as directed, undergo random drug testing and drug and alcohol treatment, submit to 24-hour electronic monitoring at the home of his mother, remain within this judicial district, surrender and/or refrain from obtaining a passport, surrender and/or refrain from obtaining any firearms, and to have no contact with co-defendants or witnesses in this case.

The Bail Reform Act governs the issue of pretrial detention.  18 U.S.C. § 3142.  A person is either to be (1) released on personal recognizance or upon execution of an unsecured bond; (2) released on conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained.  Id. at § 3142(a).  Because Hidalgo-Perez allegedly conspired to distribute over 100 grams of heroin, he faces a maximum prison term in excess of ten years.  See 21 U.S.C. §§ 841(b)(1)(B)(i), 846.  Because this is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] ... as required and the safety of ... the community ...."  18 U.S.C. §§ 3142 (f)(1)(C) & (e)(3)(A).

Once statutory presumptions of risk of flight and danger to the community are raised, the defendant has a burden of producing evidence showing that he will appear and will not pose a threat to the community. United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). However, the government ultimately must prove that the defendant is a danger to the community by clear and convincing evidence or that he poses a flight risk by a preponderance of the evidence. 18 U.S.C. § 3142(f); United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986).

In deciding whether there are any conditions of release that will achieve these goals, the Bail Reform Act requires us to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking of children or by force, fraud, or coercion], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current
> offense or arrest, the person was on
> probation, on parole, or on other
> release pending trial, sentencing,
> appeal, or completion of sentence for an
> offense under Federal, State, or local
> law; and
>
> (4) the nature and seriousness of the danger
> to any person or the community that would be
> posed by the person's release ....

18 U.S.C. § 3142(g).

This court held an evidentiary hearing on January 14, 2013 on the government's motion to revoke the magistrate judge's order and detain Hidalgo-Perez. The government introduced testimony from one witness, Officer Charles Myers, the case agent who participated in the investigation of the defendant. The government also proffered evidence by agreement during the hearing and through pretrial services reports. The government initially produced a report provided by pretrial services which stated that the defendant has used multiple aliases, has been charged with criminal activity five times, has two social security numbers, and is residing in the United States illegally. The government has now confirmed that contrary to the pretrial services report, defendant has not been charged with any past crimes.

Defendant provided various documents to the court, including past tax returns, immigration information, his driver's license, and his social security card all with the name "Sthalin

Hidalgo-Perez" in support of his position that he has always used only one identity.[1] He also produced information about his immigration status showing that he is in the United States legally and a document from the First Judicial District of Pennsylvania which illustrates that he has no prior arrests.

At the hearing, the government's witness Officer Charles Myers testified that he first learned of defendant as a result of arrests made in April of Anthony German ("German") and John Quach ("Quach"), two individuals named in a separate indictment in this district. Myers stated that an individual named Harley Perez ("Perez"), who had been recently arrested and was acting in the presence of officers, placed an unrecorded telephone call to a number for his cousin "Bico," whom he later identified as the defendant.[2] Myers heard Perez (through an interpreter) request that "Bico" provide him with 625 grams of heroin, and "Bico" directed Perez to meet his brother-in-law, German, on the 4900 block of Penn Street in Philadelphia. That night, "Bico" called Perez and stated that German was in the area and driving a red Pontiac minivan. Myers described how officers,

---

1. The government did not explain why this indictment is in the name "Estarlin Hidalgo-Perez."

2. Perez had used the defendant's name as an alias when he was arrested on at least one occasion. This had led to the confusion with the government's pretrial services report initially stating that the defendant had been charged with crimes with which he had not actually been charged.

including himself, stopped the vehicle and recovered $2,155 as well as approximately 640 grams of heroin.

Myers also testified that at the beginning of July 2012 he received information from the same cooperator, Perez, that an individual known as "Edwin," later identified as the defendant's brother, co-defendant Edwin Hidalgo-Lopez ("Hidalgo-Lopez"), ran a heroin packaging house with the defendant. Myers explained that Perez told him that the brothers packaged up to 2,000 bundles of heroin each week and then supplied the bundles for street sale. This amounts to 28,000 packets of heroin per week, that is 840 grams every seven days. Perez gave Myers a license plate number of a black Toyota Venza that he said belonged to a girlfriend of the defendant and often parked near 5400 Valley Street in Philadelphia. Perez also told Myers that Hidalgo-Lopez was wanted on a warrant for vehicular homicide in 2009, which Myers was able to confirm.

Myers further testified that during July 2012 he went to the area of 5400 Valley Street where he observed a parked black Toyota Venza with the license plate number provided by Perez. Myers saw a Hispanic female exit 5411 Valley Street and enter the Toyota. Myers followed the Toyota to 7201 Erdrick Street. There an individual later identified as co-defendant Jonathan Melendez ("Melendez") exited 7201 Erdrick Street, approached the Hispanic female, and accepted a white plastic bag.

Melendez then returned to 7201 Erdrick Street and appeared to enter the first floor apartment. Myers then noticed a black Honda Accord known to belong to Hidalgo-Lopez parked nearby. He later saw four males, later identified as defendant and co-defendants Hidalgo-Lopez, Melendez, and Hector Crespo-Luis enter the black Honda Accord. Myers attempted to follow the car but was unable to do so.

Myers declared that a few days later he returned to 7201 Erdrick Street. He observed the same four individuals exit a white Acura, enter a first floor apartment at 7201 Erdrick Street, and later exit the property and enter the white Acura. Officers stopped the Acura and searched it and the four individuals inside the vehicle. Myers stated that no drugs were recovered from the vehicle or the individuals, although $6,436 was recovered from Hidalgo-Lopez. Returning to 7201 Erdrick Street, the officers searched the apartment, where they recovered 25 racks of heroin, a total of 3,723 packets of heroin, several clear bags containing 597 grams of bulk heroin, ammunition, and drug paraphernalia.

The defendant faces a total maximum penalty of eighty years imprisonment and a mandatory minimum of five years imprisonment if he is convicted.

Based on the evidence presented at the hearing, we find that there is probable cause that the defendant was trafficking

in a substantial amount of heroin.  The government has shown that the defendant set up a large heroin transaction between a cooperator and two other individuals and that the defendant was seen in an apartment used for significant drug trafficking.  There is clear and convincing evidence that the defendant poses a danger to the community.  Defendant came forward with insufficient contrary evidence.  Under the circumstances, the government has established that no condition or combination of conditions of release will reasonably assure the community's safety.  18 U.S.C. § 3142(f).

We have doubt as to whether the government has established that defendant poses a risk of flight.  While he is a citizen of the Dominican Republic, his girlfriend, children, mother, and other family members live in the Philadelphia area.  Nevertheless, since we have found that the defendant is a risk of danger to the community which no condition or combination of conditions of release will reasonably prevent, we need not determine whether there are any such conditions which will assure his appearance at trial if he would be freed on bail.

Accordingly, we will grant the motion of the government for revocation of the magistrate judge's order releasing defendant Estarlin Hidalgo-Perez, and to detain him pending trial.